ORIGINAL
O&F
c/m

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SINGAPORE TONG TEIK PTE LTD.,

          Plaintiff,

  -against-                **MEMORANDUM AND ORDER**
                          Case No. 04-CV-3440 (FB) (RLM)
CORRADO COPPOLA, AGRO COMMODITIES,
LLC and PENN RACQUET SPORTS, INC.,

          Defendants.
------------------------------------------------------------x

*Appearances:*
*For Plaintiff:*                            *For Defendant Corrado Coppola:*
BRIAN JOSEPH DAMIANO, ESQ.      CORRADO COPPOLA, *Pro Se*
Duane Morris LLP                      2366 85th Street
1540 Broadway                         Brooklyn, NY 11214
New York, NY 10036

**BLOCK, Senior District Judge:**

        Plaintiff Singapore Tong Teik PTE Ltd. ("STT") sued Corrado Coppola ("Coppola"), his import company Agro Commodities LLC ("Agro") and Penn Racquet Sports, Inc. ("Penn Racquet") under New York law for breach of contract, fraud in the inducement and conversion arising out of a $501,895.85 loan that STT made to Coppola and Agro for the import and resale of rubber to Penn Racquet. On March 21, 2005, STT voluntarily dismissed its claims without prejudice against Penn Racquet pursuant to Federal Rule of Civil Procedure 41(a)(1). *See* Docket Entry No. 31 (Notice of Voluntary Dismissal). STT now moves for summary judgment against Coppola and Agro pursuant

to Federal Rule of Civil Procedure 56. For the reasons stated below, the Court denies plaintiff's motion and *sua sponte* dismisses plaintiff's conversion claim.

I.

STT's breach of contract claim against Coppola and Agro is based on the following allegations in its amended complaint: (1) "the parties orally agreed that STT would advance Coppola and Agro the sum of $501,895.85 to finance Agro's sales of rubber to Penn Racquet," Am. Compl. ¶ 43; (2) "Coppola verbally assured [Oei Hong Bei ("Oei"), a director of STT,] that he and Agro would repay all amounts advanced by STT immediately upon receipt of payments from Penn Racquet," *id.* ¶ 30; (3) "by June 15, 2004, [Coppola and Agro] had received a total of $501,895.85 from STT," *id.* ¶ 45; (4) "[o]n December 22, 2004, Penn Racquet advised STT's counsel that it had . . . wired the remainder of the outstanding amount [owed] to Coppola" on their sale, *id.* ¶ 38; (5) "Coppola and Agro breached their obligations to STT under the parties' agreement by failing to repay the $501,895.85 as agreed," *id.* ¶ 48; and (6) "[a]s a direct and proximate result of Coppola's and Agro's breach of the parties' agreement, STT has incurred damages of no less than $161,895.85, the remaining amount owed to STT," *id.* ¶ 50.

Regarding the fraud in the inducement claim against both defendants, STT also alleges in its amended complaint that: (1) "Coppola represented to STT that he and Agro needed financial assistance to finance Agro's importation of rubber for resale to Penn Racquet[,] . . . [and] that he and Agro would repay STT immediately upon receiving payment from Penn Racquet," *id.* ¶ 52; (2) "Coppola . . . made each of [those]

2

representations . . . in his capacity as an officer, employee and agent of, and with the full knowledge of and authorization from, Agro," *id.* ¶ 53; (3) "[s]ome or all of [those] representations have proven false, and were made in order to induce STT into advancing significant monies to Argo and Coppola, which Coppola actually intended to misappropriate for other uses," *id.* ¶ 55; (4) "STT reasonably relied on [those] misrepresentations to its detriment," *id.* ¶ 57; and (5) "[s]uch actions and conduct have caused significant injury to STT," *id.* ¶ 58.

As for its conversion claim against both defendants, STT's amended complaint alleges in addition that "Coppola has misappropriated STT's funds for his own personal use, without permission or authority to do so, thereby committing a conversion." *Id.* ¶ 67.

Finally, with respect to the relationship between Coppola and Agro, STT alleges in its amended complaint that "[they] are alter egos," *id.* ¶¶ 54, 65: specifically, as set forth in its statement of material facts, that "Coppola is the President of Agro and has been so since it was formed," and that Agro "has no directors or shareholders, and other than Coppola, has no employees or officers," Pl.'s Statement of Material Facts ¶ 3.

In support of these allegations on summary judgment, STT submits an affidavit written by Oei describing his understanding of the loan agreement and repayment schedule, records of STT's money transfers to Agro, correspondence between STT and Penn Racquet regarding payments it made to Agro and the transcript of Coppola's September 7, 2005 deposition testimony.

Coppola, proceeding *pro se,* responded to STT's motion with a letter addressed to the Court stating, in full:

> I am the Defendant, proceeding pro [s]e, in the above-referenced action. I am responding to the notice of motion for summary judgment by the Plaintiff. Every decision made was only as my position as president of the company, Agro Commodities LLC. Therefore, Corrado Coppola, as an individual should not be held liable. There is no evidence that Corrado Coppola personally profited or took any of the money. The money was solely used by Agro as an investment. The Court should dismiss all claims against Corrado Coppola.

Docket Entry No. 55 (Letter dated Apr. 27, 2007). Agro has not appeared.

## II.

The Court first considers STT's motion for summary judgment against Coppola. In this regard, STT appears to be proceeding on two alternative theories: (1) that Coppola is liable in his personal capacity as a party to the alleged agreement, and (2) that STT may pierce the corporate veil.

Even though Coppola has submitted a minimal response to STT's motion, the court must nonetheless analyze the entire record and "assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004).

### A. Breach of Contract

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance

of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

Contrary to STT's allegations, Coppola has stated that (1) "[e]very decision [he] made was only [in his] position as president of [Agro]," Docket Entry No. 55 (Letter dated Apr. 27, 2007); (2) the money transferred by STT to Agro was an investment, *see, e.g.,* Aff. of David S. Tannenbaum ("Tanenbaum Aff."), Ex. L (Dep. of Corrado Coppola dated Sept. 7, 2005) at 17 ("Mr. Oei was helping me in the investment in my business."); and (3) Agro's obligation under the agreement was only to pay back STT out of its profits from the Penn Racquet transaction, *see id.* at 24 ("The obligation that's going to go back to [STT] is whatever is left from the [Agro] business in a monetary form . . . . [C]rude rubber is a risky business. There's never a guarantee that anybody is going to make money . . . .").

These factual disputes – regarding the capacity in which Coppola entered into an oral agreement with STT and the terms of that agreement – cannot be resolved on summary judgment. As the district court opined in *Oscar Productions, Inc. v. Zacharius*, 893 F.Supp. 250 (S.D.N.Y. 1995),

> [where a plaintiff] testifies that [ ] an [oral] agreement was reached and [a defendant] avers that no such deal was struck[,] [t]he Court is left with a question of fact, the resolution of which will depend upon the finder of fact's conclusions concerning credibility and the other evidence present. To endeavor to effect such a resolution is an enterprise inappropriate for this Court to undertake on the instant motion for summary judgment.

*Id.* at 256 n.6; *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of

5

credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

Similarly, the Court cannot decide on summary judgment whether STT is entitled to pierce the corporate veil: Under New York law, veil-piercing requires "a two-part showing . . . (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil," *American Fuel Corp. v. Utah Energy Development Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997); since a genuine issue of fact still exists as to the terms of the oral agreement and therefore whether Coppola was in breach, STT has not established, as a matter of law, that Coppola's control over Agro was used to commit a wrong against STT.

## B. Fraud in the Inducement

In an action to recover damages for fraud in the inducement under New York law, a plaintiff must prove "misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).

STT has not provided any proof, apart from its bare allegations, regarding Coppola's intent in making representations to STT about repayment; accordingly, summary judgment is not warranted. *See, e.g., Woo v. Times Enterprise, Inc.*, 2000 WL 297114, at *4 (S.D.N.Y. Mar. 22, 2000) ("At the summary judgment stage, a party must

6

proffer enough proof to allow a reasonable jury to find by clear and convincing evidence the existence of each of the elements necessary to make out a claim for fraud in the inducement." (internal quotation marks and citation omitted)).

C. Conversion

To establish a cause of action in conversion under New York law, a plaintiff must show "legal ownership or an immediate superior right of possession to a specific identifiable thing" and "that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Independence Discount Corp. v. Bressner*, 365 N.Y.S.2d 44, 46 (2d Dep't 1975). Moreover, "[t]angible personal property or [s]pecific money must be involved." *Id.*

STT's allegations of conversion merely recast the breach of contract claim. "A claim to recover damages for conversion cannot be predicated on a mere breach of contract," *Priolo Commc'ns, Inc. v. MCI Telecommc'ns Corp.*, 669 N.Y.S.2d 376, 376 (2d Dep't 1998); accordingly, STT's conversion claim must be dismissed. Dismissal is appropriate even though there is no cross-motion before the Court, since "[t]he prevailing view in this Circuit is that a court need not give notice of its intention to enter summary judgment against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).

### III.

The Court need not consider STT's motion for summary judgment against Agro since STT filed its amended complaint more than two years ago, *see* Docket Entry

No. 30 (Am. Comp. filed Mar. 21, 2005), and Agro has yet to file an answer or even appear in this action; accordingly, it is appropriate for the Clerk to enter a default against it. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.").

A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A district court must nevertheless determine whether the allegations state a claim upon which relief may be granted, *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); if they do, damages "must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup*, 973 F.2d at 158.

STT's allegations, *see* Part I *supra*, are sufficient to state a claim against Agro for breach of contract, *see Harsco Corp.*, 91 F.3d at 348 (elements of breach of contract), and fraud in the inducement, *see Lama Holding Co.*, 88 N.Y.2d at 421 (elements of fraud in the inducement); *Yaniv v. Taub*, 683 N.Y.S.2d 35, 38 (1st Dep't 1998) ("Under the doctrine of respondeat superior, a corporation, including a professional services corporation, is liable for a tort committed by its employee."), but, again, not conversion, *see Priolo Commc'ns*, 669 N.Y.S.2d at 376 ("A claim to recover damages for conversion cannot be predicated on a mere breach of contract.").

Default judgment against Agro is therefore warranted, even though there is

no such motion by STT pending before the Court. *See, e.g., Singh v. Jackson*, 1986 WL 12514, at *1 (S.D.N.Y. Oct. 31, 1986) ("This Court's inherent power to manage its caseload . . . provides the authority to *sua sponte* enter a default judgment against a litigant who has failed to prosecute [its] case with reasonable diligence and who has not complied with the Court's rules of procedure." (citing *Flaksa v. Little River Marine Construction Co., Inc.*, 389 F.2d 885, 887 (5th Cir. 1968))). The Court will not now attend to any calculation of damages since the resolution of the claims against Coppola will have an obvious impact on the damages to be assessed against the corporation, if any.

## CONCLUSION

Plaintiff's motion for summary judgment is denied and its conversion claim is dismissed. After plaintiff's remaining claims against Coppola have been resolved at trial, the Court shall enter a judgment of default against Agro and determine how damages, if any, will be assessed.

**SO ORDERED.**

s/Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 17, 2007